**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JALINSKI ADVISORY GROUP, INC.,** | § | |
| | § | |
| **Plaintiff/Counterclaim-Defendant,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:18-cv-00424-N** |
| | § | |
| **QUARTERBACK FINANCIAL GROUP** | § | |
| **LLC,** | § | |
| | § | |
| **Defendant/Counterclaim-Plaintiff.** | § | |

**ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendant Quarterback Financial Group LLC ("QBF") files its Answer, Affirmative Defenses, and Counterclaims ("Answer") to Plaintiff Jalinski Advisory Group, Inc.'s ("Jalinski") Original Complaint ("Complaint") [Doc. 1] as follows:

**Nature of Action and Relief Sought**

1.      QBF denies the allegations in this paragraph.

2.      QBF lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies them.

3.      QBF denies the allegations in this paragraph.

4.      QBF denies the allegations in this paragraph.

5.      QBF admits that Jalinski purports to seek injunctive and monetary relief based on alleged federal trademark infringement, unfair competition, false designation of origin, and trademark dilution in violation of Lanham Act, 15 U.S.C. § 1051 et seq.; and related alleged acts of trademark infringement, unfair competition, deceptive business practices and trademark dilution under Texas law, including Tex. Bus. & Com. Code. Ann. § 16.103, but denies that QBF committed any such acts or that Jalinski is entitled to any such relief.

## The Parties

6.     QBF lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies them.

7.     QBF admits that it is a Texas entity. Its principal address is 320 Decker Drive #100, Irving, TX 75062. QBF denies the remaining allegations in this paragraph.

## Jurisdiction and Venue

8.     QBF admits the allegations in this paragraph.

9.     QBF admits that this Court has personal jurisdiction over QBF based upon its contacts with this forum and regularly and intentionally doing business here, but denies that QBF committed any act giving rise to this lawsuit in this forum.

10.     QBF admits the allegations in this paragraph.

## Facts Common to All Claims

I.     **Jalinski**

   **A.  Jalinski's Brand and Services**

11.     QBF lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies them.

12.     QBF lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies them.

13.     QBF lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies them.

   **B.  Jalinski's Asserted Trademark Rights**

14.     QBF admits that Jalinski purports to own United States Trademark Serial Number 86353875 registered by the United States Patent and Trademark Office ("USPTO") on April 21,

2015, based on an application filed on July 31, 2014, for the mark THE FINANCIAL QUARTERBACK in International Class 41. QBF lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph, and therefore denies them.

15.     QBF admits that Jalinski purports to own United States Trademark Serial Number 77752160, registered by the USPTO on April 27, 2010, registration number 3782665, based on an application filed on June 4, 2009, for the mark FINANCIAL QUARTERBACK in International Class 36. QBF also admits that Jalinski purports to own United States Trademark Serial Number 86314778, registered by the USPTO on November 28, 2017, registration number 5346562, based on an application filed on June 19, 2014, for the word mark FINANCIAL QUARTERBACK in International Class 36. QBF lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph, and therefore denies them.

16.     QBF admits that Jalinski purports to own United States Trademark Serial Number 86318879, registered by the USPTO on November 28, 2017, registration number 5346563, based on an application filed on June 24, 2014, for the word mark FINANCIAL QUARTERBACK in International Class 35. QBF lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph, and therefore denies them.

17.     QBF admits that Jalinski purports to own pending U.S. trademark applications: U.S. App. No. 86314005 for selected services in International Class 42; U.S. App. No. 86318839 for selected services in International Class 16; and U.S. App. No. 86318944 for selected services in International Class 9. QBF lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph, and therefore denies them.

18.     QBF denies the allegations in this paragraph.

**II.     QBF's Activities**

19.     QBF denies the allegations in this paragraph.

20.     QBF denies the allegations in this paragraph.

21.     QBF denies the allegations in this paragraph.

22.     QBF admits the allegations in this paragraph.

23.     QBF denies the allegations in this paragraph.

24.     QBF denies the allegations in this paragraph.

25.     QBF denies the allegations in this paragraph.

**COUNT I**
**Trademark Infringement under Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1))**
**(Jalinski's Class 41 Trademark)**

26.     QBF incorporates by reference the foregoing paragraphs of its Answer.

27.     QBF denies the allegations in this paragraph.

28.     QBF denies the allegations in this paragraph.

29.     QBF denies the allegations in this paragraph.

30.     QBF denies the allegations in this paragraph.

**COUNT II**
**Trademark Infringement under Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1))**
**(Jalinski's Class 36 Trademark)**

31.     QBF incorporates by reference the foregoing paragraphs of its Answer.

32.     QBF denies the allegations in this paragraph.

33.     QBF denies the allegations in this paragraph.

34.     QBF denies the allegations in this paragraph.

35.     QBF denies the allegations in this paragraph.

## COUNT III
### Trademark Infringement under Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1))
### (Jalinski's Class 35 Trademark)

36. QBF incorporates by reference the foregoing paragraphs of its Answer.

37. QBF denies the allegations in this paragraph.

38. QBF denies the allegations in this paragraph.

39. QBF denies the allegations in this paragraph.

40. QBF denies the allegations in this paragraph.

## COUNT IV
### Unfair Competition and False Designation of Origin under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a))
### (Jalinski's Class 41 Trademark)

41. QBF incorporates by reference the foregoing paragraphs of its Answer.

42. QBF denies the allegations in this paragraph.

43. QBF denies the allegations in this paragraph.

44. QBF denies the allegations in this paragraph.

45. QBF denies the allegations in this paragraph.

46. QBF denies the allegations in this paragraph.

## COUNT V
### Unfair Competition and False Designation of Origin under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a))
### (Jalinski's Class 36 Trademark)

47. QBF incorporates by reference the foregoing paragraphs of its Answer.

48. QBF denies the allegations in this paragraph.

49. QBF denies the allegations in this paragraph.

50. QBF denies the allegations in this paragraph.

51. QBF denies the allegations in this paragraph.

52.     QBF denies the allegations in this paragraph.

## COUNT VI
### Unfair Competition and False Designation of Origin under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a))
### (Jalinski's Class 35 Trademark)

53.     QBF incorporates by reference the foregoing paragraphs of its Answer.

54.     QBF denies the allegations in this paragraph.

55.     QBF denies the allegations in this paragraph.

56.     QBF denies the allegations in this paragraph.

57.     QBF denies the allegations in this paragraph.

58.     QBF denies the allegations in this paragraph.

## COUNT VII
### Trademark Dilution under Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c))
### (Jalinski's Class 41 Trademark)

59.     QBF incorporates by reference the foregoing paragraphs of its Answer.

60.     QBF denies the allegations in this paragraph.

61.     QBF denies the allegations in this paragraph.

62.     QBF denies the allegations in this paragraph.

63.     QBF denies the allegations in this paragraph.

64.     QBF denies the allegations in this paragraph.

## COUNT VIII
### Trademark Dilution under Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c))
### (Jalinski's Class 36 Trademark)

65.     QBF incorporates by reference the foregoing paragraphs of its Answer.

66.     QBF denies the allegations in this paragraph.

67.     QBF denies the allegations in this paragraph.

68.     QBF denies the allegations in this paragraph.

69.     QBF denies the allegations in this paragraph.

70.     QBF denies the allegations in this paragraph.

## COUNT IX
### Trademark Dilution under Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c))
### (Jalinski's Class 35 Trademark)

71.     QBF incorporates by reference the foregoing paragraphs of its Answer.

72.     QBF denies the allegations in this paragraph.

73.     QBF denies the allegations in this paragraph.

74.     QBF denies the allegations in this paragraph.

75.     QBF denies the allegations in this paragraph.

76.     QBF denies the allegations in this paragraph.

## COUNT X
### Common Law Trademark Infringement and Unfair Competition

77.     QBF incorporates by reference the foregoing paragraphs of its Answer.

78.     QBF denies the allegations in this paragraph.

79.     QBF denies the allegations in this paragraph.

80.     QBF denies the allegations in this paragraph.

81.     QBF denies the allegations in this paragraph.

82.     QBF denies the allegations in this paragraph.

## COUNT X
### Dilution under Tex. Bus. & Com. Code Ann. § 16.103

83.     QBF incorporates by reference the foregoing paragraphs of its Answer.

84.     QBF denies the allegations in this paragraph.

85.     QBF denies the allegations in this paragraph.

86.     QBF denies the allegations in this paragraph.

87.     QBF denies the allegations in this paragraph.

88.     QBF denies the allegations in this paragraph.

## Jury Demand

Jalinski's jury demand requires no answer. QBF demands a jury trial on all issues so triable.

## Relief Sought

QBF denies that Jalinski is entitled to any of the relief it seeks. Jalinski's prayer for relief should therefore be denied in its entirety with prejudice and Jalinski should take nothing.

## AFFIRMATIVE DEFENSES

QBF asserts the following Affirmative Defenses listed below. QBF reserves the right to amend its Answer, including asserting additional defenses and counterclaims consistent with the facts discovered in this case.

1.      The Complaint fails to state a claim upon which relief can be granted.

2.      The claims made in Jalinski's Original Complaint ("Jalinski's claims") are barred, in whole or in part, because Jalinski's purported trademark rights related to the phrase "FINANCIAL QUARTERBACK" (the "Purported Trademarks") are not famous as that term is defined in 15 U.S.C. § 1125(c)(1).

3.      Jalinski's claims are barred, in whole or in part, on the grounds that Jalinski has no enforceable trademark rights in any of the Purported Trademarks asserted in the Complaint.

4.      Jalinski's claims are barred, in whole or in part, because Jalinski cannot satisfy its burden of production in proving a likelihood of confusion or false suggestion of a connection between Jalinski and the Purported Trademarks, on the one hand, and QBF's business, on the other.

5.      Jalinski's claims are barred, in whole or in part, because some or all of Jalinski's Purported Trademarks are generic.

6.      Jalinski's claims are barred, in whole or in part, because Jalinski's Purported Trademarks are merely descriptive and have not acquired distinctiveness or secondary meaning.

7.      Jalinski's claims are barred, in whole or in part, by virtue of fraud on the USPTO in the prosecution and/or maintenance of at least one of the Purported Trademarks.

8.      Jalinski's claims are barred, in whole or in part, because Jalinski lacks standing for failure to join a necessary party.

9.      Jalinski's claims are barred, in whole or in part, by the doctrines of estoppel.

10.     Jalinski's claims are barred, in whole or in part, by the doctrine of laches.

11.     Jalinski's claims are barred, in whole or in part, by acquiescence.

12.     Jalinski's claims are barred, in whole or in part, because Jalinski has not suffered any irreparable harm directly or proximately caused by QBF.

13.     Jalinski's claims are barred, in whole or in part, because the alleged acts of QBF were neither willful, wanton, malicious, nor in bad faith.

14.     Jalinski's claims are barred, in whole or in part, by reason of third parties' dilution of some or all of the Purported Trademarks at issue. QBF hereby invokes, *inter alia*, the provisions of Chapter 33 of the Texas Civil Practice and Remedies Code and specifically requests that the comparative responsibility of any third parties be determined and that Jalinski's recovery, if any, be barred or otherwise reduced by the fault attributable to any responsible third parties.

15.     Jalinski's claims are barred, in whole or in part, by the applicable statute of limitations. QBF's has continuously used the phrase "Quarterback Financial Group" since at

least 2010, when it registered the quarterbackfg.com domain name and the Texas Secretary of State approved the phrase as QBF's assumed name. Jalinski did not file this lawsuit until 2018. A copy of the WhoIs report for the quarterbackfg.com domain name is attached as **Exhibit A**. A copy of the Assumed Name Records for Quarterback Financial Group filed with the Texas Secretary of State is attached as **Exhibit B**.

16.     Jalinski's claims are barred, in whole or in part, on the grounds that no acts, actions, use, or display of any mark by QBF creates a false designation of origin in violation of any right allegedly held or owned by Jalinski.

17.     Jalinski's claims are barred, in whole or in part, on the grounds that no acts, actions, use, or display of any mark by QBF is an act of unfair competition in violation of any right allegedly held or owned by Jalinski.

18.     Jalinski's claims are barred, in whole or in part, because to the extent any use by QBF occurred, any use by QBF predates Jalinski's alleged use for at least one of the Purported Trademarks and, therefore, QBF has superior rights in the phrase "Quarterback Financial Group" in connection with financial investment, financial advisory, and financial management services and may continue to use the mark without interference by Jalinski.

19.     Jalinski's claims are barred, in whole or in part, because even if Jalinski's Purported Trademarks are protectable, they are so weakened due to third party use that the marks are entitled to only the narrowest scope of protection.

20.     Jalinski's claims are barred, in whole or in part, because Jalinski has failed to mitigate any alleged damages.

21.     Jalinski's claims are barred, in whole or in part, because Jalinski seeks overlapping and duplicative recoveries for a single alleged wrong.

## QBF'S COUNTERCLAIMS

Without admitting any of the allegations of the Original Complaint other than those expressly admitted herein, and without prejudice to QBF's right to plead additional counterclaims as the facts of the matter warrant, QBF asserts the following counterclaims against Jalinski:

### Parties

1.      Defendant/Counterclaim-Plaintiff QBF is a Texas limited liability company with its principal place of business at 320 Decker Drive #100, Irving, TX 75062.

2.      Upon information and belief, according to Plaintiff/Counterclaim-Defendant Jalinski's allegations set forth in the Original Complaint, Jalinski is a New Jersey corporation with its principal place of business at 1400 Hooper Avenue, Suite 210, Toms River, New Jersey 08753. Jalinski filed this lawsuit and, by doing so, consented to jurisdiction and venue for counterclaims.

### Jurisdiction and Venue

3.      The counterclaims are brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, the Lanham Act, 15 U.S.C. §§ 1051, et seq., and Texas statutory and common law.

4.      This Court has subject matter jurisdiction over these counterclaims by virtue of 15 U.S.C. §§ 1119 and 1121 (Lanham Act), 28 U.S.C. § 1331 (Federal Question Jurisdiction), 28 U.S.C. § 1338 (Patent, Trademark and Copyright), 28 U.S.C. § 1367 (Supplemental Jurisdiction), and general principles of ancillary and pendent jurisdiction.

5.      The Court has personal jurisdiction over Jalinski because, *inter alia*, Jalinski submitted to the personal jurisdiction of this Court by commencing this action.

6.      Venue is proper in this District under 28 U.S.C. § 1391.

**Background**

7.      QBF does not use, and has never used, the Purported Trademarks.

8.      On or around May 20, 2015, QBF received a letter from Jalinski's counsel demanding that QBF cease use of the Purported Trademarks (the "Jalinski Demand Letter").

9.      Prior to receiving the Jalinski Demand Letter, QBF had never heard of Jalinski and was not aware of the Purported Trademarks.

10.      On or around June 2, 2015, QBF sent a letter to Jalinski's counsel explaining that Jalinski does not have a viable claim against QBF because, *inter alia*, "financial quarterback" is generic, QBF has priority of use, Jalinski and QBF's uses differ, Jalinski's alleged trademark rights are estopped, and considerable peaceful coexistence between Jalinski and QBF precludes any likelihood of confusion.

11.      Jalinski never responded to QBF's June 2, 2015 letter.

12.      On February 20, 2018, Jalinski filed the Complaint in the United States District Court for the Northern District of Texas, Dallas Division.

13.      The Complaint alleges, *inter alia*, that QBF infringes the Purported Trademarks.

14.      The word "quarterback" is a common term used in business to refer to "a person who directs or coordinates an operation or project." *quarterback*, English Oxford Living Dictionaries (2018), https://en.oxforddictionaries.com/definition/quarterback (accessed Mar. 27, 2018); *see also quarterback*, Dictionary.com (2018), http://www.dictionary.com/browse/quarterback (accessed Mar. 27, 2018) ("a person who leads or directs a group or activity"); *quarterback*, Webster's New World Dictionary (5th ed. 2014), http://www.yourdictionary.com/ quarterback (accessed Mar. 27, 2018) ("to direct or lead; manage"); *quarterback*, Merriam-Webster.com

(2018), https://www.merriam-webster.com/dictionary/quarterback?src=search-dict-hed (accessed Mar. 27, 2018) ("one who directs or leads").

15.     The phrase "financial quarterback" is commonly used in the United States wealth management industry in reference to the coordination of generalized financial services, including financial planning, financial management, financial advisory retirement planning, investment advisory, and investment management.

16.     Numerous online publications demonstrate the generic and descriptive nature of the phrase "financial quarterback":

- Tracey S. Seymour, *Optimal Asset Allocation I*, 1995 CFA Institute Conference Proceedings, at 41 (Oct. 1995), https://www.cfapubs.org/doi/pdf/10.2469/cp.v1995.n6.7 (accessed Mar. 26, 2018):

  [C]lients and advisors need to address possible contingent needs. Some contingencies may be satisfied through the optimal asset allocation of investments, but a thorough investment manager should also serve as a "**financial quarterback**" in identifying other estate planning and insurance needs.

- Gloria J. Higgins, *"Managing Expectations": The Key to Wealth Management*, The CPA Journal (Sept. 2002), http://archives.cpajournal.com/2002/0902/nv/nv1.htm (accessed Mar. 26, 2018):

  Large financial institutions define wealth-management services broadly, covering everything from serving as the "**financial quarterback**" to providing "buy/sell" investment decisions and stock picking. Although some CPAs have transitioned to the buy/sell professional, the **financial quarterback** is a more natural position.

- Matt Oechsli, *The Thrill of the Chase*, WealthManagement.com (Dec. 1, 2004), http://www.wealthmanagement.com/archive/thrill-chase (accessed Mar. 26, 2018):

  Are you serving as a **financial quarterback** for your affluent clients, providing solutions for the multidimensional aspects of their financial affairs?

- Mike Clowes, *Advisers can learn from McAfee's mistake*, InvestmentNews.com (Aug. 28, 2006), http://www.investmentnews.com/article/20060828/SUB/608280726/advisers-can-learn-from-mcafees-mistake (accessed Mar. 28, 2018):

  As brokerage firms continue to evolve from their traditional role as go-betweens in the trading of securities to becoming **financial quarterbacks** that oversee their

clients' overall financial picture, they are increasingly charging asset-based or fixed fees.

- Jonathan Chevreau, *New course for financial 'quarterback'*, National Post (Jan. 15, 2008), http://www.pressreader.com/canada/national-post-latest-edition/20080115/282638 913261193 (accessed Mar. 26, 2018):

  The ultimate role is to act as a "**quarterback**" to the wealthy, overseeing and coordinating client relationships with other professionals, such as accountants, lawyers, estate planners and trust specialists. . . . [T]he feebased compensation model may in the long run be more consistent with the role of being a **financial quarterback**. . . . If you are that **quarterback** managing a range of services, you can't necessarily be paid on a commission basis.

- Linda Stern, *One adviser isn't enough, say investors*, Reuters.com (Aug. 22, 2011), https://www.reuters.com/article/us-investments-multipleadvisers/one-adviser-isnt-enough-say-investors-idUSTRE77L4B420110822 (accessed Mar. 26, 2018):

  Duran is unusual because his firm specializes in taking on clients who have many money managers. A fee-only adviser, he sees himself as a planner who pulls together the various fragments of a client's financial life. "The fastest area of growth for us is playing the **financial quarterback** for clients who use multiple advisers," he said.

- Karen Demasters, *Financial Quarterbacks Wave Of The Future*, Financial Advisor (Sept. 16, 2011), https://www.fa-mag.com/news/financial-quarterbacks-wave-of-the-future--8363.html (accessed Mar. 28, 2018):

  To be an effective advisor for the future, it is important to understand the need for a **financial quarterback** for the ultra-high-net-worth clients, and not have the client's investments operating in separate silos and managed by separate, autonomous people.

- Kristen French, *Really Rich Really Want Financial Quarterbacks*, WealthManagement.com (June 27, 2012), http://www.wealthmanagement.com/wealth-planning/really-rich-really-want-financial-quarterbacks (accessed Mar. 26, 2018):

  **"Financial quarterback" has become a cliché in the wealth management industry**. For years, coaches and marketing gurus have urged advisors to become that central financial point person who coordinates and executes all investment and financial decisions for wealthy clients. Playing quarterback means being lead coordinator of a client's other financial service providers and givers-of-advice, such as accountants, estate attorneys, trust officers, etc.

- Julie Steinberg, *A "Quarterback" to Oversee Your Investments*, WSJ.com (Sept. 14, 2012), https://www.wsj.com/articles/SB100008723963904437794045776435710656826 62 (accessed Mar. 26, 2018):

Do you need a **financial quarterback**? The more money high-net-worth investors have, the more advisers they tend to accumulate: attorneys, accountants, financial planners, money managers, insurance agents, personal bankers. Corralling all of them can feel like a full-time job. Enter the **quarterback**—someone responsible for making sure all of the advisers are on the same page when it comes to meeting an investor's needs. The person acts as a liaison between the advisers and sets the wealth-management agenda, keeping clients up-to-date on their investment portfolio, estate planning and tax issues.

- SEI Executive Connections, *Wealth Managers to Become More Like Financial Quarterbacks*, LifeHealth.com (Sept. 29, 2014), https://www.lifehealth.com/wealth-managers-become-like-financial-quarterbacks/ (accessed Mar. 26, 2018):

  [T]he next generation of successful wealth managers will be more like **financial quarterbacks** versus traditional wealth managers. . . . Just like a coach spends extra time molding a player, senior management needs to take the lead in turning wealth managers into the firm's all-star **financial quarterbacks**.

- Jack Waymire, *Is Wealth Management Only for the Wealthy?*, Paladin Research & Registry (Apr. 8, 2015), http://blog.paladinregistry.com/advisors-2/is-wealth-management-only-for-the-wealthy-upd-apr-2015/ (accessed Mar. 26, 2018):

  What is a **Financial Quarterback**? The **financial quarterback** is an increasingly popular role that is usually provided by the financial advisor. This professional is responsible for making sure the various service providers deliver coordinated advice that is free of duplication and conflicting advice. For example, the financial planner and the CPA provide contradictory tax advice. If you do not have a **quarterback**, you have to take on this role yourself, which is usually a bad idea.

- Joshua Coleman, *Using a 'Quarterback' to Serve High-Net-Worth Clients*, WSJ.com (Sept. 29, 2015), https://www.wsj.com/articles/voices-joshua-coleman-on-using-a-quarterback-to-serve-high-net-worth-clients-1443551648 (accessed Mar. 26, 2018):

  Bringing value to HNW clients often means acting as a **financial quarterback**—connecting them with a host of skilled attorneys, consultants, insurance experts and CPAs.

- BizCastHQ, *Is Your Investment Firm Your Financial Quarterback?* (Apr. 14, 2016), http://bizcasthq.com/video/is-your-investment-firm-your-financial-quarterback/ (accessed Mar. 26, 2018):

  David Lyon, former CEO of Main Street Financial, says clients see them as a **financial quarterback** – coordinating all their investment needs with accountants, lawyers, and other service providers.

- Joe O'Boyle, *What to Look For in a Financial Advisor*, U.S. News & World Report (Aug. 25, 2016), https://money.usnews.com/money/blogs/the-smarter-mutual-fund-invest or/articles/2016-08-25/what-to-look-for-in-a-financial-advisor (accessed Mar. 26, 2018):

> Your financial advisor may serve as your **financial "quarterback"** so-to-speak, working in concert with a network of professionals to deliver comprehensive planning services as appropriate for your unique financial circumstances.[1]

17.     A compilation of all of the above online publications is attached as **Exhibit C**.

18.     On information and belief, none of the above online publications reference Jalinski's services.

19.     One or more of the above online publications used the phrase "financial quarterback" descriptively and/or generically prior to Jalinski's purported date of first use.

20.     One or more of the above online publications used the phrase "financial quarterback" descriptively and/or generically prior to Jalinski's filing dates for the Purported Trademarks.

21.     As set forth below (as well as in Jalinski's Complaint), there is an actual and ongoing controversy between Jalinski and QBF as to whether any alleged activity by QBF infringes any valid and enforceable trademarks owned by Jalinski.

### Count One:
### Declaratory Judgment of Non-Infringement and Non-Dilution

22.     QBF incorporates by reference the foregoing paragraphs of its Counterclaims.

---

[1] *See also, e.g.*, BRYON K. SPICER, DON'T GET SACKED IN RETIREMENT: A **FINANCIAL QUARTERBACK**'S PLAYBOOK FOR WINNING THE GAME (2012), https://www.amazon.com/Dont-Get-Sacked-Retirement-Quarterbacks/dp/1599323044 (accessed Mar. 26, 2018); Kevin Leahy, *'Sports Tax Man' Is a **Financial Quarterback***, NPR (July 10, 2012), https://www.npr.org/2012/07/10/156533611/spo rts-tax-man-advises-athletes (accessed Mar. 26, 2018); Rick Drennan, *You be your own **financial quarterback** when it comes to retirement planning*, Toronto.com (Apr. 24, 2014), https://www.toronto.c om/community-story/4480269-you-be-your-own-financial-quarterback-when-it-comes-to-retirement-plan ning/ (accessed Mar. 26, 2018); Aaron Katsman, *Your Investments: Do you have multiple accounts? Get a **financial quarterback***, The Jerusalem Post (Nov. 11, 2014), http://www.jpost.com/Business/Commentary /Your-Investments-Do-you-have-multiple-accounts-Get-a-financial-quarterback-381642 (accessed Mar. 28, 2018); Beth Marshall, *Playing **Financial Quarterback** in Your Own Life*, Financially Authentic (Feb. 6, 2015), http://financiallyaufinathentic.com/playing-financial-quarterback-life/ (accessed Mar. 26, 2018).

---

23.     There are multiple prior and continuous third-party descriptive uses of the term "quarterback" in connection with financial planning, financial management, financial advisory retirement planning, investment advisory, and investment management services.

24.     To the extent any use occurred, QBF used the term "financial" in a generic or descriptive manner only.

25.     To the extent any use occurred, QBF's use of the term "quarterback" and Jalinski's Purported Trademarks have coexisted in the marketplace without any actual confusion for many years.

26.     Any use by QBF of the term "quarterback" is not likely to cause confusion, mistake, or deception, or confuse the relevant public as to source, sponsorship, or affiliation with Jalinski.

27.     There are significant differences in how QBF's use of the term "quarterback" and Jalinski's Purported Trademarks are actually used in commerce, including differences in the services and/or goods, customers, and channels of trade.

28.     On information and belief, QBF does not provide services in the same geographic location as Jalinski. For example, QBF provides financial advisory and financial planning services for clients most of whom are located in or near Dallas, Texas.

29.     QBF would be damaged, and is being damaged, by enforcement of Jalinski's Purported Trademarks against QBF.

30.     QBF's use, if any, does not and will not: (a) cause confusion or mistake or deceive the public in violation of Lanham Act § 32(1) (15 U.S.C. § 1114(1)); (b) constitute unfair competition or a false designation of origin in violation of Lanham Act § 43(a) (15 U.S.C. § 1125(a)); (c) constitute unfair competition or trademark infringement under Texas common

law; (d) constitute dilution in violation of Lanham Act § 43(c) (15 U.S.C. §1125(c)); or (e) constitute dilution in violation of Tex. Bus. & Com. Code Ann. § 16.103.

31.     Accordingly, QBF is entitled to a declaratory judgment that it does not infringe or dilute the Purported Trademarks or otherwise violate state or federal statutory or common law.

**Count Two:**
**Cancellation of Jalinski's Trademark Registrations – Genericism and/or Descriptiveness**

32.     QBF incorporates by reference the foregoing paragraphs of its Counterclaims.

33.     On information and belief, third parties have continuously used the phrase "financial quarterback" generically and descriptively since before September 10, 2008—the alleged date of Jalinski's purported first use of the phrase in commerce.

34.     On information and belief, Jalinski has entered royalty-free and naked licenses with third parties relating to use of the Purported Trademarks. As a result, the phrase "financial quarterback" has become increasingly descriptive and generic since Jalinski alleged date of first use of the phrase in commerce.

35.     The phrase "financial quarterback" describes a particular type of service without designating the source of that service.

36.     The phrase "financial quarterback" is a term of art within the financial services industry.

37.     The phrase "financial quarterback" therefore does not create, in and of itself, a distinct commercial impression apart from its generic or descriptive meaning within the financial services industry.

38.     All of Jalinski's Purported Trademarks purport to reference financial services.

39.     Accordingly, Jalinski's Purported Trademarks are merely generic or descriptive and should be cancelled under Section 37 of the Lanham Act (15 U.S.C § 1119).

**Count Three:**
**Cancellation of Jalinski's Trademark Registrations – Fraud on the USPTO**

40.     QBF incorporates by reference the foregoing paragraphs of its Counterclaims.

41.     Investment Financial Services ("IFS") originally registered U.S. Registration No. 3,782,665 for the mark FINANCIAL QUARTERBACK (the "'665 Mark") on April 27, 2010.

42.     On April 28, 2015, Anliker Financial Services LLC ("Anliker") filed a petition cancel the '665 Mark" ("Anliker Petition").

43.     That same day, according to the Anliker Petition's Certificate of Service, Anliker served a copy of the petition on IFS via U.S. first class mail at its address of record (Investment Financial Services, Inc., 6710 Professional Parkway West, No. 203, Sarasota, FL 34240).

44.     On information and belief, nearly two weeks later, on May 14, 2015, IFS submitted a Combined Declaration of Use and Incontestability for the '665 Mark ("USPTO Declaration"), wherein it falsely represented to the USPTO that there was no pending proceeding involving the '665 Mark (emphasis added):

> There has been no final decision adverse to the owner's claim of ownership of such mark for such goods/services, or to the owner's right to register the same or to keep the same on the register; and ***there is no proceeding involving said rights pending and not disposed of either in the United States Patent and Trademark Office or in a court***.
>
> The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements and the like may jeopardize the validity of this submission, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

45.     On information and belief, IFS received the Anliker Petition prior submitting its USPTO Declaration on May 14, 2015.

46.     Accordingly, on information and belief, IFS knew that cancellation proceedings involving the '665 Mark were pending and not disposed of at the time it submitted its USPTO Declaration.

47.     On information and belief, as a result of result of IFS's false statement, IFS fraudulently induced the USPTO to issue a Notice of Acknowledgement Under Section 15 on May 30, 2015.

48.     On information and belief, the USPTO eventually discovered IFS's false statement, determined that the '665 Mark was ineligible for incontestable status, and rescinded its Notice of Acknowledgement Under Section 15 for the '665 Mark on June 11, 2015.

49.     IFS assigned its entire interest in the '665 Mark to Jalinski on July 5, 2015.

50.     Nevertheless, the '665 Mark must be canceled due to IFS's prior fraud committed against the USPTO.

## **Demand for Jury Trial**

QBF demands a trial by jury on all issues so triable.

## **Prayer for Relief**

WHEREFORE, Defendant/Counterclaim-Plaintiff QBF respectfully prays that this Court:

1.     Dismiss the Complaint in its entirety with prejudice and award Jalinski nothing;

2.     Render judgment in favor of QBF;

3.     Adjudge, declare, and decree that QBF's use of Jalinski's Purported Trademarks, if any, does not and will not:

   (a) cause confusion or mistake or deceive the public in violation of Lanham Act § 32(1) (15 U.S.C. § 1114(1));

(b) constitute unfair competition or a false designation of origin in violation of Lanham Act § 43(a) (15 U.S.C. § 1125(a));

(c) constitute unfair competition or trademark infringement under Texas common law;

(d) constitute dilution in violation of Lanham Act § 43(c) (15 U.S.C. §1125(c));

(e) constitute dilution in violation of Tex. Bus. & Com. Code Ann. § 16.103.

4.      Order cancellation of Jalinski's Purported Trademarks' federal registrations at the United States Patent and Trademark Office under Section 37 of the Lanham Act (15 U.S.C. § 1119);

5.      Award QBF its reasonable costs and fees incurred in this action, including attorneys' fees pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a));

6.      Award QBF any other relief to which it is entitled or as the Court deems just and proper.

Dated:      April 4, 2018                    Respectfully submitted,

                                             /s/ S. Wallace Dunwoody
                                             S. Wallace Dunwoody
                                             Texas Bar No. 24040838
                                             wdunwoody@munckwilson.com
                                             Amanda K. Greenspon
                                             Connecticut Bar No. 426639
                                             agreenspon@munckwilson.com
                                             Chase A. Cobern
                                             Texas Bar No. 24101633
                                             ccobern@munckwilson.com
                                             MUNCK WILSON MANDALA LLP
                                             12770 Coit Road
                                             Dallas, Texas 75251
                                             Telephone:    (972) 628-3600
                                             Facsimile:    (972) 628-3616

                                             **ATTORNEYS FOR
                                             DEFENDANT/COUNTERCLAIM-PLAINTIFF
                                             QUARTERBACK FINANCIAL GROUP LLC**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this document has been served via the Court's CM/ECF to all counsel of record in accordance with the Federal Rules of Civil Procedure on April 4, 2018.

                                             /s/ S. Wallace Dunwoody
                                             S. Wallace Dunwoody

760284.